UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-410-H

SHIRONDA MCCLOUD                                                                              PLAINTIFF

V.

JOHN E. POTTER,                                                                                   DEFENDANT
POSTMASTER GENERAL

**MEMORANDUM OPINION**

Plaintiff, Shironda McCloud, brought this lawsuit alleging that she was sexually harassed while working for the United States Postal Service ("USPS") and constructively discharged as a result. Plaintiff's complaints are based on the actions of a temporary supervisor, Barron Purifoy, over a two day period. Defendant, the postmaster general, has moved for summary judgment,[1] arguing that the undisputed facts of the case show Plaintiff cannot establish a claim for sexual harassment or constructive discharge. The Court has reviewed the parties' briefs and extensively examined the administrative record and deposition testimony for facts supporting Plaintiff's claims. Because the facts, when viewed in a light most favorable to Plaintiff, do not establish a viable claim, the Court will sustain Defendant's motion.

**I.**

Plaintiff began working for USPS on November 1, 2004, as a "casual employee." A "casual employee" is one who is not under a union contract and not considered a "career

---

[1] Defendant asserts that his motion is one to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment. He asserts that Plaintiff's suit should be dismissed for failure to state a claim and because Plaintiff has failed to exhaust her administrative remedies. However, Defendant never expounds upon these arguments. Rather, he exclusively argues the facts of the case as established by evidence outside the Complaint. Therefore, the Court will treat this motion as one purely for summary judgment.

employee." Plaintiff began her work on "Tour 1," a shift that works hours from approximately 10:00 pm to 7:00 am.[2] She was primarily responsible for sorting mail at a conveyor belt with other postal employees. For the most part, Plaintiff's employment appears to have gone well without significant problems. She has no complaints about her regular supervisor and she seems to have gotten along well with her co-workers.

Plaintiff asserts, however, that another supervisor, Mr. Purifoy, frequently stared at her during the first few months of her employment.[3] Then, while her normal supervisor was on leave, Mr. Purifoy filled in as her supervisor for a short period. All of the activities Plaintiff alleges constitute sexual harassment occurred between February 20, 2005 and February 21, 2005. The following events occurred over the course of those two days: (1) Mr. Purifoy stared at Plaintiff; (2) Mr. Purifoy made comments that Plaintiff was beautiful; (3) Mr. Purifoy danced around Plaintiff in an awkward manner; (4) Mr. Purifoy told Plaintiff, "I'll give you Friday off if you go out to the club with me;" (5) Mr. Purifoy gave Plaintiff Thursday and Friday off instead of her normally scheduled Wednesday;[4] and (6) Mr. Purifoy grabbed Plaintiff's wrist when she reached for her time card and told her she had to be given her time card by her supervisor. Plaintiff's sexual harassment claims are based exclusively on these six incidents.

---

[2] It appears that Tour 1 changed to 8:00 pm to 5:00 am at some point during Plaintiff's tenure. The exact hours are unimportant for consideration of the pending motion.

[3] On most occasions, Plaintiff did not notice the staring herself, but other employees told her that Mr. Purifoy was watching her.

[4] It appears that Plaintiff's normal supervisor allowed his employees to work a set schedule, meaning that they got the same night off each week. However, there was nothing guaranteeing that this practice would remain intact. Plaintiff was normally scheduled off on Wednesdays, but when Mr. Purifoy made out the schedule he gave Plaintiff Thursday and Friday off instead of Wednesday. There are no allegations that this reduced her hours for the week or in any way negatively impacted her pay. Apparently Plaintiff always had two nights off per week, one on Wednesday and one on another, unspecified day.

Immediately following these activities, Plaintiff complained to the manager, who conducted an investigation and ensured that Plaintiff never worked under Mr. Purifoy's supervision again. Plaintiff also chose to transfer to "Tour 2," which works from 7:00 am to 3:00 pm and earns $0.80 per hour less than Tour 1. After transferring to Tour 2, Plaintiff never spoke to Mr. Purifoy, but claims that on three or four occasions, Mr. Purifoy was in her area meeting with other supervisors and stared at her. In late April of 2004, Plaintiff submitted her two weeks notice of resignation and was escorted off the property at the conclusion of those two weeks.[5]

Pursuant to USPS policies, Plaintiff filed a complaint with the Postal Service's Equal Employment Opportunity office. That group held a hearing and denied Plaintiff's claims. She appealed that decision to the EEOC, which also held a hearing and found that Plaintiff had not presented a viable claim of sexual harassment. Subsequently, Plaintiff brought this action.

## II.

When a party files a motion for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "The moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record showing an absence of a genuine issue of fact." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Celotex*

---

[5] There is some confusion on the record regarding whether Plaintiff quit or was terminated. However, Plaintiff does not complain that she was fired. Rather, she agrees that she quit, but argues it was constructive discharge. Because these are the allegations of Plaintiff and this is a motion for summary judgment, the Court will accept Plaintiff's version of the facts that she, in fact, quit.

3

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once that initial showing has been made, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).

## III.

Two legal theories are available to a plaintiff who claims sexual harassment: *quid pro quo* harassment and creation of a hostile work environment. *Yates v. Avco Corp.*, 819 F.2d 630, 634 (6th Cir. 1987). Although unclear from the Complaint, Plaintiff appears to argue both forms in her response to Defendant's motion for summary judgment. The Court will, therefore, address each theory in turn.

### A.

*Quid pro quo* harassment involves "the exchange of concrete employment benefits for sexual favors." *Id.* Here, Plaintiff contends that Mr. Purifoy's request that she go dancing with him and his subsequent scheduling her off on Thursday and Friday as opposed to Wednesday constituted *quid pro quo* harassment. To prevail under this theory, Plaintiff must present sufficient evidence of the following elements:

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that . . . the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Bowman v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000).

Assuming Plaintiff can establish the first three elements, Mr. Purifoy's "change" to

Plaintiff's schedule was not a "materially adverse employment action."[6] As explained in

*Bowman*,

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.
>
> The Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable. See, e.g., Jacklyn v. Schering Plough Healthcare Prod., 176 F.3d 921, 930 (6th Cir.1999) (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); Jackson v. City of Columbus, 194 F.3d 737 (6th Cir.1999) (holding that police chief's suspension with pay was not an adverse employment action); Hollins, 188 F.3d at 662 (6th Cir.1999) (holding that "[s]atisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment action where the employee receives a merit raise"); Kocsis v. Multi-Care Management, 97 F.3d 876, 885 (6th Cir.1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

*Id.* at 461-62.

Given the language in *Bowman* and the examples cited therein, the result here is clear. Scheduling Plaintiff off on Thursday and Friday, as opposed to Wednesday, especially where Plaintiff had no objective right to be off on Wednesday, is "a mere inconvenience," not a materially adverse employment action. The change in no way effected her pay or responsibilities. Because Plaintiff has failed to put forth evidence of an adverse employment action resulting from her refusal to go dancing with Mr. Purifoy, Plaintiff cannot proceed under

---

[6] "Courts use the terms 'tangible employment detriment' and 'materially adverse employment action' interchangeably." *Bowman*, 220 F.3d at 461 n.5. This Court will use the phrase "materially adverse employment action.

the *quid pro quo* theory of sexual harassment.

**B.**

Plaintiff next claims that Mr. Purifoy's behavior over the two day period created a hostile work environment. To go forward with her hostile work environment claim, Plaintiff must offer evidence that the "discriminatory intimation, ridicule, and insult [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The harassment must be both objectively and subjectively severe or pervasive, meaning that Plaintiff must prove that a reasonable person would have found the work environment hostile or abusive and that Plaintiff personally perceived the environment to be abusive. *Id.* at 21-22. While there is little doubt that Plaintiff found the actions of Purifoy to be abusive and hostile, those actions are simply insufficient to meet the Sixth Circuit's objective standard.

The Court examines all the circumstances in determining whether the harassment was objectively "severe or pervasive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The Supreme Court has specifically announced several factors to be considered: "[1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (quoting *Faragher*, 524 U.S. at 788).

All of the actions that Plaintiff alleges constitute sexual harassment occurred over a two

6

day period.[7]  Mr. Purifoy made only a few comments (none of which were profane or overly sexually suggestive), danced around Plaintiff on one occasion, stared at Plaintiff, and grabbed Plaintiff's wrist one time.  Plaintiff has submitted no evidence to establish that the behavior of Mr. Purifoy was so pervasive as to create an objectively hostile work environment.  As stated, "isolated incidents (unless extremely serious) will not amount to" a hostile work environment.  *Id.*  Moreover, Mr. Purifoy's actions were also not sufficiently severe to create an objectively hostile work environment.  An examination of Sixth Circuit jurisprudence on this point is helpful.

In *Hensman v. City of Riverview*, 316 Fed. Appx. 412 (6th Cir. 2009), the plaintiff alleged the following conduct against her supervisor: (1) he told her that he was too distracted to listen to her because she was attractive; (2) he complimented her perfume multiple times and continuously "sniffed her;" (3) he describe the plaintiff as a "voluptuous, well endowed woman" on two occasions; (4) he went to Plaintiff's home at 11:30 pm to pick up a key and said, "you look cute in your jammies;" (5) he brought her flowers and bagels to apologize for the key incident; (6) he hugged her on three separate occasions; and (7) he "grabbed her arm so tightly that he left a mark" and yelled at her when she attempted to leave the office.  *Id.* at 413-15.  The Circuit found that these allegations could not state a claim for creation of a hostile work environment.  Although the comments regarding the plaintiff's perfume and the "sniffing" occurred somewhat frequently, the Circuit found that "this conduct does not 'permeate' the workplace with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or

---

[7] In her response to Defendant's Motion for Summary Judgment, Plaintiff asserts that the staring occurred over a longer period of time.  However, Plaintiff's complaint clearly provides that the actions complained of all occurred during the two day period in question.  Moreover, the EEOC ALJ specifically confirmed with Plaintiff and her counsel that the allegations stemmed exclusively from the actions occurring over the two day period.

7

pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 417 (quoting *Harris*, 510 U.S. at 21). Finally, and most important for this case, the Circuit found that while the physical contact was inappropriate, "it [did] not rise to the level of 'physically threatening or humiliating. [The supervisor] never propositioned [the plaintiff] or grabbed her sexually." *Id.* Given the similarity of the behavior in this case to the behavior in *Hensman*, the same result necessarily follows here.

In other cases, the Sixth Circuit has affirmed summary judgment for the employer despite more offensive and frequent behavior than that alleged here. In *Stacy v. Shoney's, Inc.*, 142 F.3d 436, 1998 WL 165139 (6th Cir. 1998) (table opinion), the Circuit affirmed summary judgment on the basis that the supervisor's behavior was not severe or pervasive where the supervisor made numerous sexually suggestive comments about the plaintiff's physical appearance, called the plaintiff at home to tell her he missed her, gave her "leering looks," and even inappropriately touched her breast. *Id.* at *3. Likewise, in *Clark v. United Parcel Service, Inc.*, 400 F.3d 341 (6th Cir. 2005), the Circuit determined that a supervisor's behavior was not severe or pervasive where the supervisor told vulgar jokes about once a month for two years, placed his vibrating pager on the plaintiff's thigh on two occasions, and pulled at the plaintiff's overalls in an apparent effort to see her underwear. *Id.* at 351-52. The behavior in this case, like that in *Clark* and *Stacy*, may have been inappropriate, but it was not so severe or pervasive as to "alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21.

## IV.

Plaintiff also contends that she was constructively discharged as a result of the alleged

sexual harassment. To establish a claim for constructive discharge, Plaintiff must show that the "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Yates*, 819 F.2d at 636-37. Plaintiff has failed to provide sufficient evidence to make this showing.

The allegedly harassing behavior in this case took place in February of 2004. Plaintiff did not quit her job until late April. Because of this delay and the fact that USPS ensured that Plaintiff no longer worked under Purifoy's supervision, the Court will only consider the events occurring during the two month period leading to her resignation in assessing the viability of Plaintiff's constructive discharge claim. *See id.* ("Because [the plaintiff] resigned from Avco on January 9, 1984, after the return from the Christmas holidays and after [her supervisor's] demotion, it is the continuing, post-remedy work situation which is relevant to our inquiry."). During this period, Plaintiff admits that she was never supervised by Purifoy and rarely even worked at the same time as him. Plaintiff contends only that on three or four occasions Purifoy was in her area while talking to other supervisors and he stared at her. There is no evidence of any contact between the two past those few incidents of staring and Plaintiff asserts no other sexual harassment that led to her decision to resign.

Mr. Purifoy's being in the vicinity of Plaintiff on three or four occasions and staring at her is simply insufficient to compel a reasonable person in Plaintiff's position to resign. In *Yates*, the demoted supervisor had direct contact with the plaintiff and informed her that he would be working next to her indefinitely. When the plaintiff immediately quit her job without seeking any clarification from management or any alternative remedy, the Sixth Circuit found that the plaintiff's behavior was not reasonable. *Id.* Likewise, in *Mast v. IMCO Recycling of*

*Ohio, Inc.*, 58 Fed. Appx. 116 (6th Cir. 2003), the Circuit found that Plaintiff's allegations of a supervisor staring at her and co-workers shunning her were insufficient to create a constructive discharge claim. *Id.* at 124 ("Even considering the [staring] incident and Plaintiff's general allegations of being shunned by her co-workers and supervisors, it cannot be said that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign. [The plaintiff] has alleged only isolated incidents that *Faragher* indicated did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment.") Plaintiff's behavior in our case is similar; a reasonable person would not have felt compelled to quit her position simply because Mr. Purifoy was in the same vicinity as her on a few occasions over a two month period and stared at her. Thus, Plaintiff cannot proceed on her constructive discharge claim.

The Court will issue an Order consistent with this Memorandum Opinion.

cc:    Counsel of Record